**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**RUSSELL L. GRUBB,**

        **Plaintiff,**        **CIVIL ACTION NO. 12-cv-14755**

    **vs.**

                              **DISTRICT JUDGE SEAN F. COX**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Russell Grubb seeks judicial review of Defendant the Commissioner of Society Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 13) and Defendant's Motion for Summary Judgment (docket no. 14). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 2.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

**I.**    **RECOMMENDATION:**

This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 13) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 15) be GRANTED.

**II.**    **PROCEDURAL HISTORY:**

Plaintiff filed an application for Disability Insurance Benefits and an application for Supplemental Security Income with protective filing dates of April 26, 2010, alleging that he had been disabled since November 25, 2005, due to arthritis and hypertension. (*See* TR 10.) The Social Security Administration denied benefits. (*See* TR 76-84.) Plaintiff requested a *de novo* hearing, which was held on May 5, 2011, before Administrative Law Judge (ALJ) Henry Perez, Jr., who subsequently found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 16-17.) The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced this action for judicial review. The parties then filed their instant Motions.

### III. PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE[1]

#### A. Plaintiff's Testimony

Plaintiff was 44 years old at the time of the administrative hearing and 39 years old at the time of alleged onset. (*See* TR 25-26.) At the time of the hearing, Plaintiff lived with his mother. (TR 26.) He testified that he sometimes mowed the lawn and would regularly take out the garbage and vacuum, but he added that his mother did the majority of the household chores, including cooking, cleaning, grocery shopping, and laundry. (TR 26-28.) He testified that when he did mow the lawn, he used a self-propelled lawn mower and that sometimes his neighbor would have to come mow the lawn for him. (TR 28.) Plaintiff testified that he previously worked in a construction job

---

[1] As discussed herein, Plaintiff's Motion asserts that the ALJ erred at Step 2 of his analysis when he found that Plaintiff's anxiety, depression, and dysthymia were not severe impairments. (*See* docket no. 13.) Other than asserting that the ALJ's error in this regard fatally flawed the remainder of the his analysis, Plaintiff raises no issues with regard to the ALJ's conclusions related to his physical impairments. Therefore, this Report and Recommendation will focus on Plaintiff's mental impairments and will only discuss Plaintiff's physical impairments when necessary for context.

2

fireproofing high-rise buildings and as a retail clerk. (TR 40-41.) He testified that he was no longer able to work in those positions because of problems with his hips, knees, shoulders, and back. (TR 40-42.)

In addition to his various physical ailments, Plaintiff testified that he was suffering from depressive symptoms likely related to the losses of his brother and his father. (TR 36.) Plaintiff indicated that his symptoms usually manifested in the form of lethargy: "I just . . . didn't feel like doing nothing is – I mean, like I knew that I had something to do, but then when it come time (sic) to do it, I just – I don't know. I just – just didn't feel like doing anything, didn't want to do nothing (sic)." (TR 37.) Plaintiff testified that he had "rough days" where he just sat around the house and wouldn't go anywhere; he wouldn't go out and eat or spend time with his mother. (TR 37.) Plaintiff told the ALJ that he felt this way four or five days out of every week. (TR 37-38.)

Plaintiff testified that in addition to the medication that he was taking for his physical pain (Ibuprofen), his doctor prescribed Prozac, Zoloft, and "all kinds of stuff" in an attempt to control his depression. (TR 36.) He indicated, however, that some of the medications caused him to feel like he wasn't himself, and one of the medications caused extreme weight loss. (TR 36.) Additionally, the medications caused him to be tired but sleepless. Thus, Plaintiff did not stay on his medications for any significant period of time. (*See* TR 36-37.) Plaintiff further testified that his doctor recommended that he see a therapist, but at the time of the hearing, he had not yet setup such an appointment. (TR 39.) He did, however, indicate that he intended to do so. (TR 39.)

### B. Medical Record

Defendant asserts that "[t]he ALJ offers a full discussion of the relevant evidence in this case" and does not set forth any statement of facts. (Docket no. 15 at 7.) Plaintiff, however, asserts that the ALJ did not discuss all of the relevant evidence related to Plaintiff's mental impairments;

3

Plaintiff, therefore, discusses his medical record in full. (Docket no. 13 at 5-8.) Defendant does not suggest that Plaintiff's account of the medical record is inaccurate. Thus, the Court, having conducted an independent review of Plaintiffs' medical record, hereby incorporates by reference the medical record as set forth in the ALJ's opinion (TR 12-13) and as set forth in Plaintiff's Motion (docket no. 13 at 5-8). The Court has will incorporate additional comments and citations as necessary throughout this Report and Recommendation.

### IV.  ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity between November 25, 2005, Plaintiff's alleged onset date, and September 30, 2009, Plaintiff's date last insured, and that he suffered from severe hypertension and arthritis of the hips, left knee, shoulders, and hand. (TR 12.) The ALJ also found, however, that Plaintiff's alleged depression and anxiety were not severe. (TR 12.) The ALJ further found that Plaintiff's allegations regarding the extent of his symptoms was not wholly credible and that Plaintiff retained the residual function capacity "to perform light work . . . except that he is limited to lifting 20 pounds occasionally, 10 pounds frequently; [he] requires a sit/stand option; [his] standing is limited to 1 hour at a time and to sitting 30 minutes, with an ability to walk four blocks; [he] can occasionally reach overhead with the right upper extremity; [and he is limited to] only occasional climbing, balancing, stopping, crouching, kneeling, and crawling." (TR 13.) The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 16-17.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from November 25, 2005, through the date of the ALJ's decision. (TR 17.)

### V.  LAW AND ANALYSIS

####  A.  Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

## B.     Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

5

      (2)      Plaintiff suffered from a severe impairment; and

      (3)      the impairment met or was medically equal to a "listed impairment;" or

      (4)      Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

    **C.**    **Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of

the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be remanded under sentence 4 because "the ALJ's finding that plaintiff's mental impairments were not severe is fatally flawed, and prevented the consideration of those impairments in the remainder of his analysis." (Docket no. 13 at 9.)

Plaintiff's argument avers that the ALJ erred at Step 2 of the sequential analysis when the ALJ failed to find that Plaintiff's depression and anxiety amounted to a severe mental impairment. (*Id.*) In support of this contention, Plaintiff relies on the diagnosis of Jessica Parsil, MA, LLP, who diagnosed Plaintiff with dysthymia and generalized anxiety disorder and assigned Plaintiff a Global Assessment Function (GAF) score of 60. (*Id.*) Plaintiff asserts that the ALJ "failed to note that plaintiff's treating doctors on many occasions diagnosed anxiety, depression, and/or dysthymia." (*Id.* at 10 (citations omitted).) Further, Plaintiff argues, even after dismissing Plaintiff's mental impairments as non-severe, the ALJ was still required to take into account any limitations caused by Plaintiff's non-severe impairments, which the ALJ failed to do. (*Id.*)

To establish a mental impairment, Plaintiff was required to prove his impairment by objective, medical evidence. *See, e.g.*, 20 C.F.R. § 404.1529, § 404.1527(a)(1)(defining mental impairments as those which result from abnormalities demonstrable by medically acceptable clinical and laboratory diagnostic techniques); 20 C.F.R. § 404.1508 (physical and mental impairments must be established by medical evidence consisting of signs, symptoms, and laboratory findings). In support of his contention that his mental impairments are severe, Plaintiff points to Ms. Parsil's report (TR 263), office treatment records and notes from Certified Physician's Assistant Regina

7

South at Family Health Center (TR 248-51), and treatment records from Academic Internal Medecine (AIM). (*See* docket no. 13 at 10.)

The doctors at AIM opined that Plaintiff "seem[ed] to be actively suffering from depression" as of June 2010. (TR 294.) They noted that Plaintiff had tried Paxil and Zoloft without benefit and that Prozac caused Plaintiff to lose 14 pounds in a short period of time. (TR 293.) In August 2010, the AIM doctors noted that his "medications were poorly tolerated and [Plaintiff] self-discontinued [using them]," so they prescribed Remeron. (TR 292.) Later that month, Plaintiff reported that the Remeron seemed to be working; his mood was "stable or slightly improved," and he "ha[d] been participating more in physical activity." (TR 291.) In September 2010, however, the AIM doctors noted that Plaintiff "ha[d] self-discontinued the therapy." (TR 290.) They noted that Plaintiff "ha[d] been noncompliant with six medications that [they had] tried in the past year or so" and discontinued SSRI therapy. (TR 290.) They opined that Plaintiff was displaying symptoms of dysthymia, which would be better treated through counseling. (TR 290.)

It appears that Plaintiff's anxiety first appeared in or around February 2008, when Plaintiff told PA South that he was having "difficulty falling asleep and worrying about different things." (TR 251.) PA South prescribed Zoloft and recommended that Plaintiff make an appointment with Ms. Parsil. (TR 251.) On March 27, 2008, Plaintiff reported to PA South that he was not feeling any better on Zoloft, so she discontinued Zoloft and prescribed Paxil; and she again recommended that he meet with Ms. Parsil. (TR 250.) On October 9, 2008, PA South reported that Plaintiff had discontinued Paxil after about a week because "he said that it did not seem to help." (TR 249.) She noted that medications like Paxil and Zoloft (SSRIs) "could take several weeks to one month to show much effect and [Plaintiff] should continue on that (sic) to give it some time." (TR 249.) On November 7, 2008, PA South noted that Plaintiff seemed to show some improvement on Prozac and

that he had gone to see Ms. Parsil. (TR 248.) PA South diagnosed Plaintiff with anxiety and depression and recommended that he continue seeing Ms. Parsil. (TR 248.) On March 23, 2009, PA South noted that Plaintiff "was taking Prozac for awhile, but stopped as it did not seem to be helping." (TR 247.) She did not include anxiety, depression, or any other mental health diagnosis in her findings. (TR 247.) Plaintiff saw PA South again on April 1, 2009. It appears that they did not discuss his depression or anxiety, and again, PA South did not include such a diagnosis in her findings. (TR 246.)

The only record of Plaintiff meeting with Ms. Parsil appears to be a report from a session on April 23, 2008. (*See* TR 263.) In her report, Ms. Parsil provided no detail for her finding under "Mental Status" that Plaintiff had "Depression: yes. Anxiety: yes." (TR 263.) She noted that "[h]is mood is depressed and he is organized in his thinking." (TR 263.) She further noted that he had "signs of dysthymia," that Plaintiff "ha[d] been experiencing a consistently depressed mood during the last two years," and that Plaintiff was "also experiencing symptoms of anxiety." (TR 263.) She then diagnosed Plaintiff with "Dysthymia" and "Generalized anxiety disorder" and assigned a GAF score of 60. (TR 263.)

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment will be considered non-severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted). As Plaintiff notes, Step 2 of the framework "has been described as a 'de minimus hurdle,' . . . 'allowing the Secretary to screen out totally groundless claims.'" *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). An ALJ should only find that an

impairment is not severe when the impairment "has no more than a minimal effect on the ability to do basic work activities." SSR-9603p. This is because the regulations do no more than "allow the [Commissioner] to deny benefits summarily to those applications with impairments of a minimal nature that could never prevent a person from working." SSR 85-28 1985 WL 56856 (1985) (citations omitted). And as long as the ALJ finds that the claimant has a severe impairment, the ALJ must consider the functional limitations resulting from all of the claimant's impairments, whether severe or non-severe. *See Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, the ALJ first considered Ms. Parsil's report and the Report of Dr. Thomas Tsai, a state psychological consultant. (*See* TR 12.) The ALJ afforded great weight to each of these reports and found that Plaintiff's GAF score of 60 coupled with Dr. Tsai's report showed that Plaintiff's depression and anxiety only caused mild limitations. (TR 12.) The ALJ found that the record failed to support any of Plaintiff's claims of significant limitations in basic work activities. (*See* TR 12-13.) The ALJ noted that in March 2011, Plaintiff "was offered a referral to psychiatry but was unwilling to be evaluated noting that he did not want to start antidepressant therapy." (TR 12-13.)

Moreover, Plaintiff has neither alleged nor does the record support any claim that Plaintiff's anxiety and depression cause any limitation in his ability to perform basic work activities. At Plaintiff's hearing, although he discussed his depression, he never alleged any related functional limitations. None of Plaintiff's physicians noted any functional limitations related to Plaintiff's mental impairments. And Plaintiff failed to include any mental impairments or related functional limitations in his disability report forms or functional reports. (TR 206, 176.) Thus, because the ALJ reasonably concluded that the record does not show that Plaintiff's anxiety and depression significantly restricted his abilities to perform basic work functions, the ALJ did not err in finding

that Plaintiff's mental impairments were not severe. And while Plaintiff is correct that the ALJ did not include any functional limitations based on Plaintiff's non-severe mental impairments, other than his own subjective complaints of "daytime somnolence" and that "he did not feel like doing anything or going out," Plaintiff did not and does not allege even minimal functional limitations. Therefore, Plaintiff's argument fails, and his Motion should be denied.

## VI.     CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 13) should be DENIED, and Defendant's Motion for Summary Judgment (docket no. 15) should be GRANTED.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: September 11, 2013  s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: September 11, 2013  s/ Lisa C. Bartlett
Case Manager